*Hugh J. Carroll*, for plaintiff.
*Edwin Metcalf*, for defendant.

---

## SAMUEL T. DOUGLAS, Administrator, *vs.* JOHN B. HENNESSY.

A. executed a bond to B., " her executors, administrators, and assigns," conditioned on the transfer by A. of certain realty, in certain contingencies, to B. " or her assigns."

*Held*, that the administrator of B. was her " assign " within the meaning of the word " assigns " in the condition.

*Held*, further, that a transfer to the administrator of B. would satisfy the condition of the bond.

Hence the death of B. did not render the performance of the condition impossible although no assignment of the bond had been made by her.

When an agreement is recited in a sealed instrument, the recital will not make the agreement a specialty unless it appears that the recital was intended to renew the agreement under seal.

To an action on a bond conditioned upon the transfer of such parts of certain lands as were not needed to pay certain debts, which debts were to be paid from the proceeds of the sale of the lands, the defendant pleaded performance: the plaintiff replied setting out a surplus of sale proceeds in the defendant's hands above the amount of the debts, and closing with a special traverse. On demurrer to the replication, —

*Held*, that the surplus money in the defendant's hands was in effect surplus land.

*Held*, further, that the affirmative inducement of the replication was a sufficient answer to the plea, and that the replication with its special traverse was therefore good.

Covenant was brought on the promise to pay expressed by the words, " to which payment well and truly to be made I bind myself," in a bond with a condition of defeasance.

*Held*, that these words contained a covenant to pay, and that the action of covenant would lie.

*Held*, further, that no demand was necessary before action brought.

The defendant pleaded performance.

*Held*, that the burden of proof was on the defendant to prove. the allegations of his plea, although a breach of the condition of the bond was alleged in the declaration.

COVENANT.

This action was brought March 2, 1885, on the bond printed at length in *Fussell* v. *Hennessy*, 14 R. I. 550, 551–553, after final decree in that case.

The defendant demurred to the whole declaration.

The demurrer was argued May 5, 1885, and the court, July 18, 1885, filed the following rescript : —

" The demurrer is to the entire declaration, and therefore must be overruled if either count is good. The court thinks that the second count is good, unless the death of the obligee of the bond in suit, without assignment, rendered it impossible for the defendant to perform the condition to convey to the obligee or her assigns, and consequently released him. If a decision is desired on this point, the court wish the parties to present briefs on it. If the point is not contested, the demurrer will be overruled."

Arguments in print on the point reserved were filed by both parties to the case.

*February* 20, 1886. DURFEE, C. J. This is a suit on a bond given by the defendant to the plaintiff's intestate, the late Euphemia Fussell, wife of John Fussell, of Roxbury, Mass. The bond is dated April 4, 1866. The condition recites that William Duff, of Providence, is indebted to the defendant in divers sums of money ; that said John Fussell is indebted to Duff in divers sums of money ; that Duff has conveyed by deed, of even date with the bond, certain parcels of land in Massachusetts to the defendant ; and that the defendant has agreed, upon payment of the indebtedness of Duff to him and of Fussell to Duff, etc., to convey said lands to said Euphemia " or her assigns," and provides that, upon his conveying the lands as agreed to Euphemia " or her assigns," the bond shall be void. The declaration contains three counts. The second count alleges that Euphemia died December 12, 1866, and that administration on her estate was granted in Massachusetts to John Fussell, January 5, 1867. It alleges that the defendant sold

the lands March 7, 1877, and that on September 28, 1877, after all debts and expenses paid, the defendant had the sum of $15,575.65 of the proceeds of the lands. It alleges that the plaintiff was appointed administrator on the estate of Euphemia in this State, September 15, 1884. It alleges a breach of the bond in that the defendant had never conveyed to Euphemia during her life, nor to her heirs or administrators since her decease, any portion of the lands or of the proceeds thereof. The defendant demurred to the entire declaration. At a former term we expressed the opinion that the second count is good unless the death of Euphemia without assignment, before the debts were paid, rendered it impossible for the defendant to perform the condition of the bond and consequently released him. Since then counsel have presented elaborate briefs on that question, which we have considered.

The defendant contends that it was impossible for him to perform the conditions, because the obligee died before the debts were paid and left no assigns. He contends that the word " assigns " can only mean some person nominated by the obligee to receive a conveyance in her stead, because it is only in that way that she could assign the lands, having no title to them. Is it true that the word " assigns " means assignees of the lands? The word is used in the obligatory part of the bond as well as in the condition, and as used in the obligatory part it manifestly means, not assignees of the lands, but assignees of the bond itself. It seems clear to us that it has that meaning, too, in the condition; for the obligee had nothing but the bond, or her right under it, which is the same thing, to assign. Certainly a conveyance to an assignee of the bond would satisfy the condition as completely as a conveyance to any person nominated to receive it, for there is no better way in which a person could be nominated to receive it than by an assignment of the bond. But if the meaning of the word " assigns " is assignees of the bond, or of the obligee's right under it, why would not a grant of administration operate as an assignment, making the administrator the assign to whom conveyance could have been made to satisfy the condition ? The authorities, which have been referred to, show that the word " assigns " may be construed to extend to executors and administrators, the executor or adminis-

trator of an obligee or covenantee being his assign or assignee by operation of law. Jacob's Law Dict. tit. Assignee; 1 Bacon's Abr. *663; 3 Com. Dig. 256; Dyer, 13; 2 Shepp. Touchstone, 369. In *Baily* v. *De Crespigny*, 10 B. & S. 1, 12, decided by the Court of Queen's Bench in 1869, Hannen, J., delivering the opinion, remarks: "The word 'assigns' is a term of well known signification, comprehending all those who take either immediately or remotely from or under the assignor, whether by conveyance, devise, descent, or act of law." We think the word "assigns" in the condition of the bond may be construed to include an administrator as assignee by act of law, if such a construction comports with the character and intent of the instrument.

The defendant contends that the only purpose of the bond was to confer a privilege on the obligee, which was intended to be purely personal to her, to wit, the privilege of having the lands conveyed to her on payment of the debts, and that accordingly, on her death before they were paid, the bond ceased to be obligatory. But in our view the bond was not intended to be purely personal, since it was intended to be assignable, and, by its terms, the penal sum is to be paid to the obligee, "her executors, administrators, or assigns," if the condition is not performed. Moreover, the obligee's right to have the lands conveyed to her does not depend on *her* paying the debts, but becomes effectual when they are paid, whoever pays them.

Another argument is, that an administrator, as assignee by act of law, is merely an assignee of personalty, and that therefore it could not have been contemplated that the lands might be conveyed to him in satisfaction of the condition. The administrator, as assignee by act of law, takes only the bond; it is by the act or agreement of the parties, if at all, that he becomes the person, *persona designata*, to whom the lands may be conveyed in satisfaction of the condition. The bond was a *chose in action*, and, if not discharged by the death of the obligee, passed to the administrator as a part of her personal assets. The administrator became by operation of law the obligee in her stead, and might, therefore, not unnaturally be the person designated to receive satisfaction of the condition, since he was the only person who could sue the bond if the conditions were not satisfied. Undoubtedly, if the lands

had been conveyed to him, he would have been required in equity to hold them in trust for the estate. We ought to construe the bond so that it shall survive rather than become extinct, *ut res magis valeat quam pereat*, unless there is good reason for construing it otherwise. Perhaps it may be thought that the omission of the words, " her executors, administrators," in the condition, is such a reason, seeing that the words are contained in the obligatory part. We think the use of the words in the obligatory part is too purely formal for that. We find no other contrary indication either in the bond or in the declaration, which on demurrer is our only other source of light. Our conclusion is, that the condition might have been satisfied by conveying the lands, or the portion of them not required for the payment of debts and expenses, to the administrator, and consequently that the demurrer must be overruled.                               *Demurrer overruled.*

After this decision the defendant demurred to the first and third counts of the declaration, and to the second count filed a plea of performance. To this plea the plaintiff answered with a replication, concluding with a special traverse, and the defendant demurred to the replication.

*November* 23, 1886. DURFEE, C. J. The demurrers to the first and third counts in the plaintiff's declaration raise the question whether the recital of agreement, contained in the bond given by the defendant to Euphemia Fussell, the plaintiff's intestate, converts the agreement, by implication or construction, into a covenant by the defendant with the intestate. The bond is a bond in the ordinary form for $6,000, to be paid to the intestate, her executors, administrators, or assigns. The condition is as follows, to wit : —

" The condition of this obligation is such that, whereas William Duff, of said city of Providence, is now indebted to the said John B. Hennessy in divers sums of money, and whereas the aforenamed John Fussell, the husband of the aforenamed Euphemia Fussell, is indebted to the said William Duff in divers sums of money, and whereas the aforenamed William Duff has by his deed of even date herewith conveyed to him, the above bounden John B. Hennessy, certain parcels of land, a part situated in said city of Roxbury, and a part in the town of West Roxbury, in

said county of Norfolk; and whereas the said John B. Hennessy has agreed that upon the full payment of the amount so due and payable to him from the said William Duff, and all costs and expenses to which he may be subjected in the collection thereof, and also upon the full payment of the amount due and payable from the said John Fussell to the said William Duff, and all expenses incidental to the collection thereof, he, the said John B. Hennessy, will convey to her, the said Euphemia Fussell, or her assigns, said parcels of land so conveyed as aforesaid to him, the said Hennessy, by the said William Duff, or so much of said land as may not have been required for the final payment of the amount so due to said Hennessy by said Duff, and the amount so due to the said Duff by the said Fussell. Now, therefore, if upon the full payment of all sums due and payable by the said William Duff to him, the said Hennessy, and upon the full payment of the amount so due and payable from the said Fussell to him, the said Duff, together with the interest and costs and expenses incident to the collection of the said several sums, the said John B. Hennessy, his heirs, executors, and administrators, shall convey to her, the said Euphemia Fussell, or her assigns, said parcels of land so conveyed to him, the said Hennessy, by him, the said Duff, or so much of said land as may not have been required for the purpose of said payments, then this obligation is to be void, but otherwise to be and remain in full force and effect.

" JOHN B. HENNESSY."

The plaintiff contends that the recital of the agreement in this condition is equivalent to a renewal of it under seal, converting it from a simple contract into a covenant. He cites cases in which an agreement recited, recognized, or educed by construction, in an instrument under seal, has been held to be binding as a covenant. *Barfoot* v. *Freswell*, 3 Keble, 465 ; *Severn* v. *Clerk*, 1 Leonard, 122 ; *Seddon* v. *Senate*, 13 East, 63 ; *Saltoun* v. *Houstoun*, 1 Bing. 433 ; *Sampson* v. *Easterby*, 9 B. & C. 505. The recital of an agreement in a deed sometimes operates as a covenant, but not always. The recital does not operate so when it is made *diverso intuitu*, that is, with a different view or for a collateral purpose. *Courtney* v. *Taylor*, 7, Scott N. R. 749. According to modern authorities, it only operates so when it is apparent from the whole

scope of the instrument that it was intended to operate so ; or, in other words, there is no technical rule, but courts are bound in each case to ascertain the intent and give the instrument effect accordingly. *Marryat* v. *Marryat*, 28 Beav. 224 ; *Isaacson* v. *Harwood*, L. R. 3 Ch. App. 225 ; *Jackson* v. *North Eastern Railway Co.* L. R. 7 Ch. Div. 573 ; *Borrowes* v. *Borrowes*, 6 I. R. Eq. 368 ; *Saunders* v. *Milsome*, L. R. 2 Eq. 573 ; *Aspdin* v. *Aspdin*, 5 Q. B. 671, 683 ; *Ivens* v. *Elwes*, 34 L. J. N. S. Eq. 249 ; *Farrall* v. *Hilditch*, 5 C. B. N. S. 840. " It is plain," say the court in the last named case, p. 854, " that the court ought to be cautious in spelling a covenant out of a recital of a deed, because that is not the part of a deed in which covenants are usually expressed."

In *Marryat* v. *Marryat*, *supra*, a simple contract debtor executed a deed, in which he admitted the amount of his debt and secured it by an assignment of property to his creditors: *held*, that this did not make the debt a specialty. The court was of opinion that the deed was executed, not for the purpose of making the acknowledgment, but for a collateral purpose, namely, for the purpose of giving security for the simple contract debt. " It is to be observed," say the court, " that, though you may infer the promise to pay from the recital, the promise to pay simply raises a mere *assumpsit*, unless the object of the deed is confined to that acknowledgment; but if the object of the deed is other than that, and merely collateral to it, then the recital amounts to nothing."

In *Isaacson* v. *Harwood*, *supra*, it was held that a mortgage under seal given to secure the payment of certain trust moneys to the *cestuis que trustent*, and which contained a recital acknowledging liability for them, did not convert the liability into a specialty debt. " I cannot doubt," said Lord Cairns, "that the sole object of the deed was to give security for the debt, and all the recitals appear to me, not to be by way of covenant for payment of the debt, but a simple narrative leading up to the security." And he remarks, elsewhere in his opinion, " In every case it is a question of the construction of the instrument, What did the parties intend ? " And that the recital of the debt to be secured in a mortgage does not convert it into a specialty, see *Drummond's Administrators* v. *Richards*, 2 Munf. Va. 337 ; 1 Jones on Mortgages,

§ 678. In such cases the purpose of the recital is not to convert the debt into a specialty by renewal under seal, but to identify it as the debt intended to be secured.

In this case, then, the question is, What did the defendant intend by the recital in the condition of the bond ? Did he intend to renew his agreement under seal, or did he intend simply to recite it in order to express the purpose of the bond and what it obliged him to do to escape its penalty ? Unless his intention was to renew the agreement, which we assume to have been an agreement with the intestate, though it is not so expressed, the recital cannot be treated as equivalent to a covenant. It seems to us that it would be going beyond the plain purpose of the recital to find in it any-thing but the terms of the defeasance. In *Huddle* v. *Worthington,* 1 Ohio, 423, a bond was given to secure a conveyance of real estate, and the court held that covenant would not lie on the agreement set forth in the condition. In *United States* v. *Brown,* 1 Paine, 422, the court held that covenant would not lie on words in an instrument inserted by way of condition, or defeasance by the per-formance of some collateral act. The condition, say the court, is for the benefit of the obligor, showing the terms on which he can exonerate himself. In *Tomlinson* v. *Ousatonic Water Company,* 44 Conn. 99, the words of recital in the condition of a bond given by the company were, " Whereas the Ousatonic Water Company has undertaken, and *does hereby undertake and agree.*" And the court held that covenant would lie on the recital, but the court remarked : " If we strike out from this language the clause, ' and does hereby undertake and agree,' the remainder manifestly is nothing more nor less than the condition of the bond ; and in that case the plaintiff's remedy would be on the bond." The case with the words out would be precisely like the case at bar. The plain-tiff cites cases in which courts of equity have specifically enforced agreements, indicated in bonds given to secure the performance of contracts for the sale or conveyance of land. The recital of a contract in the condition of a bond may suffice to take it out of the statute of frauds, without converting it into a covenant, and a court of equity simply demands proper proof of a contract to en-force it, without regard to whether it be simple contract or cove-nant.

Our conclusion is that the recital was inserted simply for the purpose of showing, in connection with the rest of the condition, the terms on which the obligor could discharge himself from the obligation of the bond; and that to construe it as equivalent to a covenant would be to give it an effect which was not intended. The demurrers to the first and third counts are therefore sustained.

The second count sets forth the bond and condition, and alleges a breach of the condition and a forfeiture of the penalty, averring that the defendant has sold the land and received therefor, beyond what was required to pay incumbrances and the debts for which he was entitled to hold the land under the bond and the expenses of selling, a large surplus of proceeds, which he still retains. To this count the defendant pleads that, when he sold the land, the moneys due to him from Duff and to Duff from Fussell, with interest, etc., had not been paid, and that all the land was required to pay the same, and that he sold the land accordingly to pay the same, and so, he says, he has performed the condition of the bond. To this the plaintiff replies that he ought not to be barred, etc., because, he says, "that heretofore, to wit, at said Providence, on the 28th day of September, A. D. 1877, after the full payment and satisfaction of all said debts of said Fussell to said Duff and of said Duff to said Hennessy, and the expenses of collecting the same, there remained in the hands of the defendant a residue of the proceeds of the said lands in said writing obligatory and covenant mentioned, to wit, the sum of fifteen thousand five hundred and seventy-three dollars and sixty-three cents, which was not, and no portion of which was, required for the payment of said debts and expenses, nor for the payment of any part of the same; without this, that the whole of the said land was required for the payment of said debts and expenses, in manner and form as is in the said defendant's said plea alleged." The defendant demurs to the replication.

It will be seen that the replication is in the form of a special traverse, that is to say, the traverse is preceded by an affirmative averment or inducement. The defendant contends that it is bad. Undoubtedly the plaintiff might have used the common traverse, but nevertheless the special traverse is recognized as legitimate

when the inducement amounts in substance to a sufficient answer to the last pleading. Stephens on Pleading, *183. Does the inducement amount to such an answer? We think it does. The plea is that all the land was required to pay debts and expenses. The replication is that, after all debts and expenses were paid, there was a surplus of $15,573.63. If all the land was required, there could have been no such surplus. It may be said that, for anything that appears, the land was in such condition that nothing less than the whole would have sold for enough to pay debts and expenses, though the whole sold for more than enough. We do not think this meets the point, for if the defendant could not sell less than the whole for enough, it does not follow that he could sell the whole for more than enough, and after paying debts and expenses retain the surplus, without a breach of the bond. It seems to us that in such case the defendant is in this dilemma: either that the sale is itself a breach of the bond, or that, the sale being allowable, the retention of the surplus proceeds is a breach, on the ground that the surplus is, within the meaning of the bond, "so much of the land as is not required" to pay debts and expenses. In our opinion the latter is the correct view. When the land is sold for the purposes of payment, the proceeds are in effect the land converted into money, and what is left after the payment is in effect "so much of the land as is not required." Indeed, this is the view which was advanced by the defendant himself in his answer to the suit in equity brought against him in Massachusetts by John Fussell, administrator on the estate of Euphemia, and John Fussell, Jun., his son.

The demurrer to the replication is overruled, and the replication sustained.

*Demurrers to first and third counts of the declaration sustained; demurrer to replication to plea of performance to second count overruled.*

After this opinion the case was at the April Term, A. D. 1887, of this court, submitted to a jury which returned a verdict that the bond in question was the defendant's deed, and that the defendant had not fulfilled the conditions of the bond as alleged in his plea of performance to the second count of the declaration. The defendant then moved in arrest of judgment and also petitioned for new trial.

*July* 23, 1887.  STINESS, J.  The plaintiff sues in an action of covenant upon a bond, alleging as a breach that the defendant has neither performed the condition nor paid the whole nor any part of the penal sum.  The defendant pleaded *non est factum* and a plea of performance.  After verdict for the plaintiff, the defendant moved in arrest of judgment, upon the ground that an action of covenant will not lie upon this bond.  Although actions of covenant upon an ordinary bond with defeasance are not common, yet they are not without authority to support them.  The difficulty in such cases lies in finding a promise in the instrument. In this case, upon other counts in the declaration, the court has decided that the recital of an agreement in a bond, upon which the obligation may be defeated, is not equivalent to a covenant to perform the agreement.

So in *Hathaway* v. *Crosby*, 17 Me. 448, cited by the defendant, the court found that the bond was strictly a bond of defeasance, and not a covenant to perform the act recited in the condition. The action was in debt.  A statute provided that in actions upon bonds with a penalty, with a condition which provides for the performance of some covenant or agreement, the jury may assess the damages sustained by breaches of the condition thereof. Hence the court held that, as there was no covenant to perform the condition, the damages for its breach should not have been assessed by a jury.  If the breach of the covenant sued upon is simply an omission to do the act by the performance of which the bond might become void, an action of covenant will not lie; for in such cases there is no promise under seal to do it.  Such was the case of *Powell* v. *Clark*, 3 N. J. Law, *517.  But in the present case the covenant sued on is the promise to pay, which is claimed to lie in the words, " to which payment well and truly to be made I bind myself," etc.  The question, then, is whether these words import a covenant to pay.

In *Anonymous*, 3 Leonard, 119, case clxix., it was held that the words, " I am content to give," etc., " did amount to as much as ' I promise ' to pay," etc., and that either debt or covenant would lie.  *Norrice's case*, Hardres, 178, sustained an action of covenant on the words, " I oblige myself to pay so much money at such a day, and so much at another day."

*March* v. *Freeman*, 3 Lev. 383, was an action of debt on a sealed bill. The court says : " In every case where a covenant is to pay a certain sum, the party may have either debt or covenant for the money." In *Hill* v. *Carr*, 1 Ch. Cas. 294, frequently cited upon this point, the chancellor, Lord Nottingham, remarks : " And a covenant will lie on a bond, for it proves an agreement." In 2 Sedgwick on Damages, 7th ed. 263, the learned author says : " A bond undoubtedly proves an agreement; but is the agreement proved the one stated in the penalty, to pay the money for which the obligor declares himself bound, or in the condition ? " If there be no agreement in the condition, it would seem necessarily to follow that the only agreement possible is an agreement to pay the penalty.

In *United States* v. *Brown*, 1 Paine, 422, the action was covenant on bond, conditioned upon the faithful performance of the duties of an office. The court remark that covenant might probably be maintained upon the penalty of the bond, if the breach was properly assigned, because it contained an acknowledgment of indebtedness and a promise to pay, and the breach would be the non-payment of the money ; but as the breach alleged was misfeasance in office, an action of covenant would not lie.

*Hill* v. *Rushing*, 4 Ala. 212, was an action of covenant on an attachment bond, alleging as breaches that the defendants had not paid the penalty nor prosecuted the action. It was held that the action could be maintained. *State* v. *Woodward*, 8 Mo. 353, was covenant on a sheriff's bond, alleging two breaches of the condition, followed by an averment that the defendants had not paid the penalty. The court says : " It is clear that, by the common law, an action of covenant was a concurrent remedy with debt on a single bill obligatory, or a penal bond subject to be defeated, by the performance of conditions. In such an action the breach of covenant would be the non-payment of the debt in the one case; in the other, the non-payment of the penalty." As the breaches assigned, however, were breaches of the condition, it was held that covenant would not lie. See, also, *Taylor* v. *Wilson*, 5 Ired. 214.

We think these authorities are sufficient to support the conclusion that an action of covenant may be maintained on the promise to pay which the words of the bond import.

The defendant also petitions for a new trial upon the ground of two alleged erroneous rulings at the trial. *First*, that no demand need be shown to maintain the action. The covenant to pay, being express and absolute, subject only to avoidance by performing the condition of the bond, we think that no demand was necessary. Such was the decision in *Ramsey* v. *Walthan*, 1 Mo. 395 ; *Gibbs* v. *Southam*, 5 B. & Ad. 911. *Second*, that the burden of proof, under the pleadings, was on the defendant to show performance. The pleas were *non est factum* and performance. Under a plea of *non est factum* the execution of the bond is all that is denied, and when that is established the issue must be found for the plaintiff. *Middleton* v. *Sandford*, 4 Camp. 34 ; 2 Greenleaf on Evidence, § 292 ; *Mann* v. *Eckford's Executors,* 15 Wend. 502. Under the plea of performance, the burden was on the defendant to establish it. The defendant could defeat the obligation upon either one of two conditions : *first*, by conveying all the land, in case the debts described were paid ; *second,* by conveying so much of the land as was not required to pay them, if they were not otherwise paid. It was for him to show in which, if either, way his bond had become void. "If any of the covenants be in the disjunctive, so as it is in the election of the covenantor to do the one or the other, then it ought to be specially pleaded, and the performance of it, for otherwise the court cannot know what part hath been performed." *Oglethorpe and Hide's case,* 1 Leonard, 311, case ccccxxx.

In *Cook* v. *Herle,* 2 Mod. 138, " It was agreed that the assignment of a breach according to the words of the covenant is good enough, and that, if anything be done which amounts to a performance, the other side must plead it."

The fact that a breach is alleged in the declaration does not alter the rule of evidence under these pleadings. Thus in *Mann* v. *Eckford's Executors,* 15 Wend. 502, 509, the court says, with reference to a demand : " If a demand had been averred in the declaration, the plaintiff would not have been bound to prove it. The plea of *non est factum* puts in issue nothing but the execution of the deed on which the action is brought ; and, as a general rule, neither party can be either required or permitted to go beyond the issue joined."

The defendant being required to plead performance, and having pleaded it, we see no reason why the general rule, that the party who asserts a fact must prove it, does not apply to this case. We think there was no error in the ruling on this point.

*Motion overruled. Petition dismissed.*

*William W. Douglas & Charles E. Gorman*, for plaintiff.

*James Tillinghast, William H. Greene, & Patrick J. McCarthy*, for defendant.